## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **MURCHISON CAPITAL PARTNERS, L.P., et al.**, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:12-CV-4746-L** |
| **NUANCE COMMUNICATIONS, INC.,** | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Nuance Communications, Inc.'s ("Defendant") Motion to Dismiss the Complaint and for Sanctions, filed November 27, 2012. Murchison Capital Partners, L.P., et al. ("Plaintiffs") filed their responses on August 26, 2013. Defendant replied on September 9, 2013. After careful consideration of the motion, pleadings, record, and applicable law, the court **grants** Defendants' Motion to Dismiss the Complaint and **denies** Defendant's Motion for Sanctions.

## I.      Background

This case concerns a securities fraud claim. Plaintiffs originally filed this action on November 1, 2012 in the 44th Judicial District Court of Dallas County, Texas, asserting claims against Defendant. In Plaintiffs' Original Petition (the "Petition"), Plaintiffs allege a cause of action for securities fraud under the Texas Securities Act (Tex. Civ. Code Ann. § 581-33) to recover damages arising from Defendant's fraudulent inducement of Vocada, Inc. ("Vocada") and its former stockholders into a merger agreement. Pl.'s Original Pet. 1. Plaintiffs also seek exemplary damages, prejudgment and postjudgment interest, attorney's fees, and court costs. *Id*. at 13. Plaintiffs are all

former stockholders in Vocada who sold their stock to Defendant.  *Id*. ¶ 49.  Defendant removed this action to federal court on November 20, 2012, on the basis of diversity of citizenship and the amount in controversy.

In April 2007, Defendant and Vocada began discussing a potential business combination. *Id*. ¶ 33.  In July 2007, Nuance proposed a merger "with an initial $20 million in cash or stock going to the Vocada stockholders and $4 million in cash or stock going to employee retention and management bonuses, and an additional $21 million in contingent 'Earnout Consideration' conditioned on Veriphy revenues hitting certain targets over a three-year period post-closing."  *Id*. ¶ 34.  Veriphy was the name of Vocada's software.  *Id*. ¶ 30.  Before the Merger Agreement was approved and closed, Defendant stated that it "intend[ed] to fully pursue the Veriphy business and consider[ed] the achievement of the earnout targets very important to the realization of the benefits of the transaction for Nuance."  *Id*. ¶ 39.  Vocada's board voted to approve the merger on October 16, 2007.  *Id*. ¶ 40.  The Merger Agreement closed on November 2, 2007.  *Id*. ¶ 41.

In June 2009, Defendant sent an "Earnout Notice" to Vocada's Stockholder Representative, stating that the stockholders "were due no consideration under the first $7 million tranche of the Earnout Consideration."  *Id*. ¶ 42.  After the Stockholder Representative requested additional information, Defendant provided the information in the fall of 2009.  *Id*. ¶ 43.  The Stockholder Representative again requested more information in April 2010; however Defendant refused to provide that information.  *Id*.  In June 2010, Defendant sent its second "Earnout Notice."  *Id*. ¶ 44.

In December 2010, the Stockholder Representative, on behalf of the stockholders, "initiated an arbitration proceeding" against Defendant "based on the arbitration clause in the Merger Agreement that requires disputes relating to the Earnout Consideration to be arbitrated in New York,

**Memorandum Opinion and Order - Page 2**

New York.  *Id.* ¶ 45.   On October 5, 2012, the arbitration panel concluded that Defendant fraudulently induced Vocada's board and stockholders to enter into the Merger Agreement.  *Id.* ¶ 46.  According to Plaintiffs, the Panel found that: (1) "[Defendant] made material representations of fact in the Side Letter to Vocada's board in order to induce the board members to enter into the Merger Agreement"; (2) "[t]he statements were false when made"; (3) "Vocada's board was justified in relying on the false representations contained in the Side Letter"; and (4) "Vocada's board members would not have entered into the Merger Agreement absent the assurances contained in the Side Letter."  *Id.* ¶ 47.

While the Arbitration Panel found that Defendant fraudulently induced Plaintiffs, it concluded that "[Defendant]'s misrepresentations of material fact did not significantly contribute to Vocada's inability to achieve its earnout.  On the contrary, the Panel finds that even if [Defendant] had complied with its representations regarding its current intentions, and its contractual promise to include revenue goals, it is reasonably certain that Veriphy would, nonetheless, not have achieved any of the three earnout thresholds identified in the Merger Agreement."  Def.'s Ex. A 30 ("Award of Arbitrators").

On the same day this action was removed to federal court, Defendants moved to dismiss Plaintiffs' claims under Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.  As noted above, Plaintiffs filed a response on August 26, 2013.  On September 9, 2013, Defendants filed a reply.

## II.    Motion to Dismiss Based on Improper Venue

### A.    Standard for Rule 12(b)(3) - Improper Venue Due to Forum-Selection Provision

"Forum-selection clauses are presumptively valid: '[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998) (citation omitted). "The burden of proving unreasonableness is a heavy one, carried only by a showing that *the* clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court." *Id.* (emphasis in original) (citation omitted). "Allegations that the entire contract was procured as the result of fraud or overreaching are 'inapposite to our [forum-selection clause] enforceability determination, which must . . . precede any analysis of the merits [of the contract's validity].'" *Id.* (citation omitted).

> Fraud and overreaching must be specific to a forum selection clause in order to invalidate it.  That is, *The Bremen*'s exception for unreasonable fraud or overreaching does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable.   Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

*Haynsworth v. The Corporation*, 121 F.3d 956 (1997) (emphasis in original) (citation omitted).[1]

Additionally, "in general, a party is not bound by a fraudulently induced contract." *Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 454 (2000).  "Underlying this rule is the notion that

---

[1] *The Bremen* exception arises from a United States Supreme Court decision, *The Bremen v. Zapata Off Shore Co.*, 407 U.S. 1 (1972).  The Court explains that the presumption of enforceability of forum-selection provisions can be overcome by a clear showing that the forum-selection clause is unreasonable under the circumstances based on the following factors: "(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."   *Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991); *The Bremen*, 407 U.S. at 12-13, 15, 18).

a party induced by fraud to enter into an agreement has not provided the assent necessary to make a binding contract." *Id*. "'One who is entitled to avoid an entire written contract because it lacked his assent can no longer be held bound by any of its stipulations . . . .'" *Id*. (citation omitted).

B.      *Application*

The Merger Agreement entered into by Plaintiffs and Defendant states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York . . . .  Except as provided in Sections 7.4(d) and 8.5(c) [sic], each of the parties hereto irrevocably consents to the exclusive jurisdiction and venue of any court within New York County, State of New York, in connection with any matter based upon or arising out of this Agreement or the matters contemplated herein . . . .

Def.'s Ex. B at 84, §11.7.

In its motion to dismiss, Defendant argues that the forum-selection clause within the Merger Agreement should be enforced.  Defendant states that Plaintiffs' fraudulent inducement claim is "clearly within the scope of the forum-selection clause" and that "[w]hen the controversy revolves around whether one party was fraudulently induced into a contract, the forum-selection clause applies." Def.'s Mot. to Dismiss and for Sanctions ("Motion") 9.  Defendant also contends that "to avoid a forum-selection clause on the basis of fraud or coercion, a plaintiff must plead and prove specific acts of fraud relating directly to the forum-selection clause, as opposed to the contract in general." *Id*. at 10.

Plaintiffs counter that a party should not be bound by any provision of a fraudulently induced contract.  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Response") 7.  Plaintiffs argue that they are not just "claiming" that the contract as a whole was fraudulently induced; instead, they are arguing that an arbitration panel has already concluded that Defendant defrauded them into the

Merger Agreement.[2]  Plaintiffs contend that "once fraud in the inducement of a contract has been adjudicated, none of the provisions of the fraudulently induced contract are enforceable against the defrauded party.  *Id*. at 7.

The court agrees with Plaintiffs and determines that the forum-selection clause is not enforceable.  Defendant hangs its hat on the idea that a forum-selection provision cannot be held unenforceable solely because a litigant argues that the contract itself has been fraudulently induced; however, Defendant misses the point. None of the prior precedent that Defendant cites has addressed a situation in which an arbitration panel has already made a final, binding, non-appealable judgment as to the fraudulent nature of the contract.  For example, in *Haynsworth*, the court first states that "[f]raud . . . must be specific to a forum selection clause in order to invalidate it."  *Haynsworth*, 121 F.3d at 963.  The court goes on to say that *The Bremen* exception (in other words, the exception for when forum-selection provisions can be held unenforceable due to their unreasonableness) "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable.  Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion." *Id*. (emphasis in original) (citation omitted).  At first glance, this explanation in *Haynsworth* seems to support Defendant's argument that since Plaintiff did not allege that the forum-selection provision *itself* is a product of fraud, the provision must be enforceable.  This case, however, is not simply a

---

[2] Both parties agree that the decision by the arbitration panel is binding, albeit for different reasons. In Defendant's Motion, it states that "the Arbitration Panel issued a final, non-appealable decision on the fraudulent inducement claim," and explains that the "Merger Agreement expressly provides that the decision rendered by the Arbitration Panel is binding and final." Mot. 14 n.13.  In their Response, Plaintiffs state that "[t]he finding of fraud is *binding* on Nuance." Resp. 7.  "In Texas, an arbitration award has the same effect as the judgment of a court of last resort. Arbitration awards are favored by the courts to dispose of pending disputes and every reasonable presumption should be indulged to uphold the arbitration proceeding. *Milliken v. Grigson*, 986 F. Supp. 426, 431 (S.D. Tex. 1997), *aff'd*, 158 F.3d 585 (5th Cir. 1998).

dispute arising out of a transaction that is based upon an *allegation* of fraud; instead, this is an action in which fraud has already been *determined*.  Therefore, the contract itself, along with its provisions, is invalid.

Defendant cites to other cases to support its contention that when "the controversy revolves around whether one party was fraudulently induced into a contract, the forum-selection clause applies."  Mot. 9.  For example, in *International Software Systems Inc. v. Amplicon, Inc.* (a decision Defendant cites for support), the court states that "the entire controversy centers around which party's interpretation of the contract is the correct one, and whether [plaintiff] was fraudulently induced to enter into the contract."  77 F.3d 112, 116.  *Amplicon* is therefore distinguishable from this case since it has already been determined in this case that Plaintiffs were fraudulently induced to enter into the Merger Agreement.  Additionally, *Hoffman v. Burroughs Corporation* (another decision cited to by Defendant) states that the plaintiff's "claims for fraudulent inducement into contract and breach of warranties impliedly made upon entering an agreement are undoubtedly related to that agreement" and therefore the claims were subject to the forum-selection provision. 571 F. Supp. 545, 547 (N.D. Tex. 1982).  Again, *Hoffman* is addressing *claims* for fraudulent inducement.  In this case, Plaintiff is not *claiming* fraudulent inducement; rather, the arbitration panel has already held that fraudulent inducement occurred.

The court agrees with Plaintiffs' reliance on *Dunbar Medical Systems, Inc. v. Gammex Inc.*, which states that a party is not bound by a contract he was induced by fraud to enter and therefore the court did not need to enforce the contractual provision related to punitive damages.  216 F. 3d 441, 454 (5th Cir. 2000).  Defendant tries to distinguish *Dunbar* by contending that it did not hold that all of the provisions of a fraudulently induced contract were void.  Def.'s Reply in Support of

its Mot. to Dismiss ("Reply") 3. In its attempt to prove this point, Defendant states that the court held that Texas law applied since the "underlying fraudulently induced settlement agreement 'contains a choice of law clause that provides that the Agreement shall be construed and governed by the laws of the State of Texas.'" *Id.* (quoting *Dunbar*, 216 F.3d at 447 n.6). Therefore, according to Defendant, clearly not every provision within the fraudulently induced contract was considered void since the court still followed the choice-of-law clause. This quotation, however, was taken out of context. *Dunbar* states that Gammex filed a motion for summary judgment arguing that under a Texas Supreme Court decision, the Settlement Agreement barred plaintiff's fraudulent inducement claim. The footnote at the end of this sentence simply states: "The Settlement Agreement contains a choice-of-law clause that provides that the Agreement 'shall be construed and governed by the laws of the State of Texas.'" *Dunbar*, 216 F.3d at 447 n.6. This footnote was simply explaining that Gammex made its argument under Texas law; the footnote was not saying that the court was necessarily following Texas law solely because of the choice-of-law clause.

Therefore, the court holds that the forum-selection clause is unenforceable and will therefore not grant Defendant's motion to dismiss on this ground.

## III. Motion to Dismiss Based on Statute of Limitations

### A. *Standard for Rule 12(b)(6) - Failure to State a Claim and Statute of Limitations Defense*

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the

**Memorandum Opinion and Order - Page 8**

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in

**Memorandum Opinion and Order - Page 9**

a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293. Moreover, because this case was removed from state court, Texas's "fair notice" pleading standard rather than the stricter federal standard applies. *Chandler Mgmt. Corp. v. First Specialty Ins. Corp.*, No.

3:12-CV-2541-L, 2013 WL 395577, at *6 (N.D. Tex. Jan. 31, 2013) (citing *De La Hoya v. Coldwell Banker Mexico, Inc.*, 125 F. App'x 533, 537-38 (5th Cir. 2005)).

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

B.     *Analysis*

Defendant states that Plaintiffs' claim under Section 581-33(B) of the Texas Securities Act ("TSA")  must be brought within the shorter of five years after the sale or three years after the untruth or omission should have been discovered.  Mot. 17 (citing Tex. Civ. Code. Ann.   §§ 581-33(H)(3)(a)-(b)).  Defendant argues that Plaintiffs are barred under either time period.  According to Defendant, the sale occurred on October 16, 2007, when the parties executed the Merger Agreement.  Therefore, since the lawsuit was not filed until November 1, 2012, Defendant contends that Plaintiffs' suit is barred.  Additionally, Defendant argues that "the purported fraud was discovered more then three years ago" since, in their Original Petition, Plaintiffs noted that "'[i]n June 2009, Nuance delivered to Vocada's Stockholder Representative . . . an Earn-out Notice reporting that the Vocada stockholders were due no consideration under the first $7 million tranche of the Earn-out Consideration'" and that "'[i]n the fall of 2009,' the Stockholder Representative requested and was provided with information 'pertaining to Nuance's efforts to sell the Veriphy software post-closing.'" *Id*. at 18 (quoting Pl.'s Original Pet. ¶¶ 42, 43).  Therefore, according to Defendant, Plaintiffs were put on notice of their potential claim for fraudulent inducement at this time and are therefore barred by the statute of limitations.

**Memorandum Opinion and Order - Page 11**

Plaintiffs first argue that the TSA starts the five-year period from the date of the actual *purchase or sale* rather than the date of the underlying contract. Resp. 21. Plaintiffs cite to a state court decision explaining that "[a]rticle 581  33(H) clearly provides an optimum limitations period of five years for securities fraud claims, and this limitations period is measured *from the date of the 'purchase or sale,'* not the date of the agreement." *Id*. (quoting *Pitman v. Lightfoot*, 937 S.W.2d 496, 529 (Tex. App.   San Antonio 1996, writ denied)). Since the sale contemplated by the Merger Agreement was closed on November 2, 2007, Plaintiffs argue that its suit filed on November 1, 2012, was filed in time and is not barred by the statute of limitations. Additionally, Plaintiffs contend that neither they nor their Stockholder Representative discovered or should have discovered the Defendant's purported fraud until April 2010, at the earliest. *Id*. at 22-23. Therefore, according to Plaintiffs, their lawsuit, filed on November 1, 2012, is not barred by the statute of limitations.

The court agrees with Plaintiffs. First, based on the case law and the relevant statutory language, it is clear that the TSA starts the five-year time period from the *purchase* (the closing of the deal), not the signing of an agreement. If the five-year time period commences on November 2, 2007 (the date that the sale stated in the Merger Agreement was closed), Plaintiffs' November 1, 2012 lawsuit is not barred. Additionally, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiffs, it is highly plausible that Plaintiffs did not discover or should not have discovered the fraud until, at the earliest, April 2010. As Plaintiffs suggest, that the Plaintiffs received an Earnout Notice reporting that the stockholders were not entitled to any portion of the Earnout Consideration does not immediately demonstrate a knowledge or assumption of fraud. The Stockholder Representative for Plaintiffs did not complete his review

of the materials provided by Defendant until April 2010.  Therefore, for the purposes of reviewing

this motion to dismiss, this three-year statute of limitations does not bar Plaintiffs' lawsuit.

        For these reasons, the TSA's five-year (from the date of sale) and three-year (from the date

that the fraud was discovered or should have been discovered) statute of limitations provisions do

not bar Plaintiffs' lawsuit, and Defendant's motion to dismiss will be denied on these grounds.

**IV.      Motion to Dismiss Based on *Res Judicata* or Claim Preclusion**

        *A.       Standard for Applying* Res Judicata *or Claim Preclusion*

        "Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated

or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559,

571 (5th Cir. 2005) (citation omitted).   "The test for claim preclusion has four elements: (1) the

parties in the subsequent action are identical to, or in privity with, the parties in the prior action;

(2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has

been a final judgment on the merits; and (4) the same claim or cause of action is involved in both

suits." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010) (citation omitted).   "In order to

determine whether both suits involve the same cause of action, this [c]ourt uses the transactional

test." *Singh*, 428 F.3d at 571 (citation omitted).   The Fifth Circuit has also explained the

transactional test:

> Under the transactional test, a prior judgment's preclusive effect extends to all rights
> of the plaintiff with respect to all or any part of the transaction, or series of connected
> transactions, out of which the original action arose.   What grouping of facts
> constitutes a "transaction" or a "series of transactions" must be determined
> pragmatically, giving wright to such considerations as whether the facts are related
> in time, space, origin, or motivation, whether they form a convenient trial unit, and
> whether their treatment as a unit conforms to the parties' expectations or business
> understanding or usage.

*Id*. (citations omitted).

**Memorandum Opinion and Order - Page 13**

B.      *Analysis*

Defendant contends that the arbitration panel that reviewed Plaintiffs' prior claims was a court of competent jurisdiction and its decision served as a final, binding, nonappealable judgment. Mot. 14.   Additionally, given that the Stockholder Representative was serving on behalf of all stockholders, Defendant asserts that this case involves the same parties that participated in the prior arbitration. *Id*. at 14-16.  Finally, Defendant argues that the claim at issue could have been and was in fact submitted to the arbitration panel. *Id*. at 16.  Defendant states that the arbitration panel denied Plaintiffs' request for damages for fraudulent inducement and then Plaintiffs now come to this court re-alleging fraudulent inducement under a different Texas statute[3] seeking the same damages that they were denied.  *Id*.  Defendant asserts that both statutory fraud claims arise out of the events surrounding the negotiation of the Merger Agreement.  *Id*.  Defendant argues that at any point during the nearly two years of litigation over the fraudulent inducement claim, Plaintiffs could have alleged a violation of the Texas Securities Act instead of, or in addition to, the Texas Business and Commercial Code.  *Id*. at 16-17.  Finally, Defendant contends that Plaintiffs essentially conceded that the claims raised in arbitration are identical to the claim raised before this court by basing the allegations in its Original Petition on facts and findings from the arbitration.  *Id*. at 17.

Plaintiff argues that the jurisdiction of an arbitration panel is expressly limited by the scope of the arbitration clause or the parties' written stipulation.  Resp. 11.  According to Plaintiffs, since the arbitration clause in the Merger Agreement exclusively applied to disputes relating to the Earnout Distribution, the claim under the TSA was not an arbitrable claim over which the arbitration panel

---

[3] Plaintiffs brought their arbitration claim under Section 27.01 of the Texas Business and Commercial Code and bring their current claim to this court under the Texas Securities Act.

**Memorandum Opinion and Order - Page 14**

had jurisdiction. *Id.* Plaintiffs argue that the TSA has nothing to do with Earnout Consideration, which is more focused on "benefit-of-the-bargain" damages. *Id.* Plaintiffs contend that since they were "unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action," *res judicata* should not apply. *Id.* at 12. Plaintiffs further explain that their "claims for breach of contract and statutory fraud in arbitration sought to recover the $21 million in Earnout Consideration *benefit-of-the-bargain* damages under the Merger Agreement." *Id.* at 14. Plaintiffs also state in a footnote that the arbitration panel "further had jurisdiction to consider all actual damages sought by [Plaintiffs] for the statutory fraud claim including both benefit-of-the-bargain and out-of-pocket damages because the parties stipulated in a written order that [Plaintiffs'] claims set forth in the [Arbitration Demand] were arbitrable." *Id.* at 14 n.44. Plaintiffs contend that the TSA does not implicate the Earnout Distribution and that, with its new claim under the TSA, they can recover actual damages "as statutorily prescribed by the Texas Securities Act,"[4] which is unique to a TSA claim.

The court agrees with Defendant and holds that Plaintiffs are barred from bringing their claim under the TSA because of *res judicata* and claim preclusion. Plaintiffs are correct in stating that the jurisdiction of an arbitration panel is expressly limited by the scope of the arbitration clause or the parties' written stipulation. Plaintiffs accurately state that the arbitration panel only had authority

---

[4] The remedy that Plaintiffs seek under the Texas Securities Agreement is described as "the value of the Vocada stock at the time of sale to Nuance, plus the amount of any income Nuance received on the Vocada stock, less any consideration Nuance paid for the Vocada stock, plus interest at the legal rate from the time of the sale." Resp. 14 (citing Pl.'s Original Pet. ¶ 52).

to review claims related to the Earnout Distribution and Earnout Consideration[5]; however, the claim that they now bring before this court, a claim under the TSA, is absolutely related to the Earnout Distribution and Earnout Consideration.  For example, in Plaintiffs Arbitration Demand, their first count is titled "Fraud in a Stock Purchase Transaction Under Tex. Bus. & Com. Code § 27.01." Under this count, Plaintiffs explain that Defendant "falsely represented material facts to Vocada's representatives for the purpose of inducing the stockholders to enter into the Merger Agreement." Def.'s Ex. C 138.  More specifically, Plaintiffs state that Defendant:

> falsely represented that it would integrate Veriphy into its existing healthcare line . . . falsely represented that it would bundle Veriphy with PowerScribe and its other healthcare software products to boost sales and revenues . . . falsely represented that it would hire and train an adequate and dedicated sales force for the Veriphy product to meet the revenue thresholds necessary to pay the Earnout Consideration . . . falsely promised to set specific sales targets for Veriphy-related products within its healthcare sales force in an effort to achieve the milestones needed to pay the Earnout Consideration . . . falsely promised to use "commercially reasonable efforts" to do all things necessary to secure for the Vocada stockholders the benefits of the bargained-for Earnout Consideration.

*Id*.  Without question, these allegations within the Arbitration Demand relate to the Earnout Consideration and Defendant's misrepresentations regarding its efforts to make sure a certain level of revenue from the Veriphy-related products was reached so that Plaintiffs would  receive their anticipated payment.

The next step is to compare these allegations from the Arbitration Demand to the allegations in Plaintiffs' Petition for the lawsuit brought before this court.  Plaintiffs claimed a violation of the TSA as their only cause of action. In Plaintiffs' Petition, they state that Defendant "offered to buy or bought securities from Plaintiffs by means of untrue statements of material fact or omissions of

---

[5] Plaintiffs also had the option of bringing a claim before the arbitration panel related to the escrow account, but that is not relevant to this case.

material fact necessary in order to make the statements made, in light of the circumstances, not misleading." Pl.'s Original Pet. ¶ 51.   Under the factual background within Plaintiffs' Original Petition, they set forth six headings:  (1) "Vocada's Inception"; (2) "Nuance seeks to acquire Vocada"; (3) "Vocada specifically requests Nuance's commitment to invest in Veriphy sales"; (4) "Nuance provides Vocada's board with a 'Side Letter' containing Nuance's purported intentions to commit resources to selling Veriphy and achieving the earnout;" (5) "Nuance pays no 'Earnout Consideration' to the Vocada stockholders, and the Stockholder Representative initiates an investigation"; and (6) "The three-member arbitration panel concludes th[at] Nuance committed fraud." *Id*. at 5-10.

It is beyond cavil that Plaintiffs are bringing duplicative allegations before this court as they brought before the arbitration panel in December 2010.  When comparing both sets of allegations, there is no distinction of any consequence.  Both claims refer to Defendant's misrepresentations as to how it would bring in revenue from Veriphy sales, which is directly connected to the Earnout Consideration.  The transactional test is met since the allegations set forth are decisively related in time, space, origin, and motivation.  They form a convenient trial unit and, from the court's perspective, their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Plaintiffs also contend that the TSA would allow them to seek a different type of damages or remedy, which should prevent claim preclusion from taking effect.  The court, however, agrees with Defendant that this "unique" remedy provided by the TSA ("the value of the Vocada stock at the time of sale to [Defendant], plus the amount of any income [Defendant] received on the Vocada stock, less any consideration [Defendant] paid for the Vocada stock, plus interest at the legal rate

from the time of the sale") is the functional equivalent of Plaintiffs having the chance to receive all actual damages (including both benefit-of-the-bargain and out-of-pocket damages)[6].  Based on the overall similarity between remedies, the transactional test is met, given that the treatment of the two claims as a unit conforms to the parties' expectations or business understanding or usage.  The arbitration panel found that "even if [Defendant] had complied with its representations regarding its current intentions, and its contractual promise to include revenue goals, it is reasonably certain that Veriphy would, nonetheless, not have achieved any of the three earnout thresholds identified in the Merger Agreement."  Def.'s Ex. A 30 ("Award of Arbitrators").  In other words, the arbitration panel did not even have to determine damages, as it held that Defendant's fraudulent inducement was not a but-for cause of the earnout thresholds not being reached.

Therefore, the four elements needed for claim preclusion exist: (1) the parties in this current lawsuit are identical to, or in privity with, the parties in the prior arbitration; (2) the judgment in the prior case was rendered by a court of competent jurisdiction (the arbitration panel); (3) there has been a final judgment on the merits made by the arbitration panel; and (4) the same claim or cause of action is involved in both suits.  For these reasons, Plaintiffs' claim under the TSA should be barred according to *res judicata* and claim preclusion.  The court will therefore grant Defendant's motion to dismiss on this ground.

---

[6] Plaintiffs note in their Response that the Panel had jurisdiction to consider all actual damages sought by the Stockholders for the statutory fraud claim pursuant a stipulated written order.  Resp. 14 n.44.

**Memorandum Opinion and Order - Page 18**

**V.      Sanctions Under the Court's Inherent Authority and 28 U.S.C. § 1927**

        *A.      Standard for Sanctions Under the Court's Inherent Authority and 28 U.S.C. § 1927*

        "Any attorney or other person admitted to conduct cases in any court of the United States

. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by

the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct." 28 U.S.C. § 1927 (2006).  "Before a sanction under § 1927 is appropriate,

the offending attorney's multiplication of the proceedings must be both 'unreasonable' and

'vexatious.'" *F.D.I.C. v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994).  The Fifth Circuit has held

that this standard requires "that there be evidence of bad faith, improper motive, or reckless disregard

of the duty owed to the court." *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir.

1998).  The liability created under § 1927 is only for excessive costs due to persistent prosecution

of a meritless claim. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991).  "Punishment under

this statute is sparingly applied, and 'except when the entire course of proceedings were unwarranted

and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may

not shift the entire financial burden of an action's defense.'" *F.D.I.C. v. Calhoun*, 34 F.3d 1291,

1297 (5th Cir. 1994) (citation omitted).  Under § 1927, monetary sanctions for expenses, costs, and

attorney's fees may be "imposed only on offending attorneys; clients may not be ordered to pay such

awards." *Matta v. May*, 118 F.3d 410, 413-14 (5th Cir. 1997) (citing *Travelers Ins. Co v. St. Jude's

Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994).

        *B.      Analysis*

        In its attempt to obtain sanctions in the form of costs and attorney's fees, Defendant cites to

cases involving lawsuits that were "clearly barred by *res judicata*" and parties that are "repeatedly

suing the same parties over and over . . . ." Mot. 20.  Additionally, Defendant cites cases in which

parties pursue "meritless claims and had an improper purpose in advancing those claims." *Id*. 20.

Finally, Defendant provides examples of parties that have purposely kept their "meritless case alive

for no purpose other than to force [the opposing party] to settle or to defend it." *Id*. 21.  The court

finds that there is no evidence of this specific type of unreasonable or vexatious behavior in this case.

Two of the three grounds for which Defendant sought dismissal were denied.  Based on the court's

analysis, Plaintiffs' claims were not barred by the statute of limitations or by a forum-selection

provision.  Therefore, *res judicata* was the lynchpin that prevented Plaintiffs from bringing their

claim any further.

Given the understandable confusion with the impact of a prior arbitration panel decision and

that Plaintiffs did assert two claims on two different statutes, the court does not believe the evidence

supports that Plaintiffs brought their claim with an improper purpose.  While the court does hold that

Plaintiffs' claim under the TSA is barred by the *res judicata* doctrine (especially in light of the

manifest similarities between the Arbitration Demand and the Petition), it does not determine that

the litigation is unreasonable or vexatious.  For these reasons, an award of sanctions is unwarranted,

and the court will deny Defendant's Motion for Sanctions.

## VI.    Conclusion

For the reasons herein stated, the court concludes that Plaintiffs' claim under the TSA is

barred by the doctrine of *res judicata* and claim preclusion.  Additionally, the court holds that

Defendants are not entitled to sanctions under § 1927 in the form of an award of costs and attorneys'

fees.  Accordingly, the court **grants** Defendants' Motion to Dismiss the Complaint and **denies**

Defendant's Motion for Sanctions.  Plaintiffs' claim is **dismissed with prejudice**.  The court will issue judgment by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 30th day of September, 2013.


Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 21**